# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| FRANKLIN KENNETH COLLINS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:16-CV-01711-NCC |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Franklin Kenneth Collins ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 17), and Defendant has filed a brief in support of the Answer (Doc. 20). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 23).

## I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on May 13, 2013 (Tr. 155-158). Plaintiff was initially denied on September 9, 2013, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") on September 18, 2013 (Tr. 99-104, 105-106). After a hearing, by decision dated September 15, 2015, the ALJ found Plaintiff not disabled (Tr. 17-34).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

On August 29, 2016, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 1, 2012, the alleged onset date (Tr. 22). The ALJ found Plaintiff has the severe impairments of osteoarthritis and degenerative disc disease, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23-25).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a light work[2] with the following limitations (Tr. 26). He cannot climb ladders, ropes or scaffolds (*Id.*). He can occasionally climb stairs and ramps, and can occasionally stoop, kneel, crouch, and crawl (*Id.*). He is limited to frequent handling and fingering with the upper extremities (*Id.*). He must avoid concentrated exposure to temperature extremes and extreme humidity (*Id.*). The ALJ found Plaintiff unable to perform any past relevant work (Tr. 29). The ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including mail clerk, retail price worker, and photocopy machine operator (Tr. 30-31). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 31). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

2

to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to

reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff generally asserts that the ALJ erred in his RFC determination. Specifically, Plaintiff argues that the ALJ failed to properly develop the record and engaged in "medical conjecture" when determining Plaintiff's RFC because the ALJ gave the opinion of Dr. Pierre Moeser, M.D., Plaintiff's treating rheumatologist,[3] "very little weight" and the ALJ did not receive an RFC assessment from a consultative examination or request an opinion from Plaintiff's other treating physician (Doc. 17 at 8-9). For the following reasons, the Court finds that Plaintiff's argument is without merit, and

---

[3] The parties do not dispute that Dr. Moeser is Plaintiff's treating rheumatologist (Doc. 17 at 8; Doc. 20 at 6).

5

that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary

responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

In some cases, the duty to develop the record requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. § 404.1519a(b). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011); *see also Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) ("[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."). Therefore, "[a]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson*, 51 F.3d at 779. "There is no bright light test for determining when the Commissioner has failed to develop the record." *Gregg v. Barnhart*, 354 F.3d 710, 712 (8th Cir. 2003). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair and prejudicial." *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995).

Here, the ALJ properly supported his RFC determination with substantial evidence including "some" medical evidence. First, the ALJ properly weighed the opinion of Dr. Moeser. "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a

7

treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted). Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must "give good reasons" for doing so. *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

In a Physical Medical Source Statement dated April 28, 2015, Dr. Moeser indicated Plaintiff's diagnosis as osteoarthritis with a poor prognosis (Tr. 304). Dr. Moeser noted Plaintiff's symptoms as pain, fatigue, joint stiffness, tenderness, and crepitus[4] (*Id.*). In support of these statements, Dr. Moeser identified the following clinical and objective findings: multiple joint crepitus, restricted range of motion, pain with motion, and x-rays demonstrating osteoarthritis in multiple joints (*Id.*). Dr. Moeser opined that Plaintiff could not sit for more than 10 to 15 minutes without needing to get up and cannot stand for more than 10 minutes without need to sit down or walk around (Tr. 305). In an 8-hour work day, Dr. Moeser opined that Plaintiff could sit for about 2 hours and stand or walk for less than 2 hours (*Id.*). Dr. Moeser further opined that Plaintiff would need to take unscheduled breaks 4 to 5 times during and 8-hour work day (*Id.*). With prolonged sitting, Dr. Moeser indicated that Plaintiff's legs would need to be elevated 50% of the time during an 8-hour work day (Tr. 306). Dr. Moeser also opined that Plaintiff could rarely lift less than 10 pounds, never twist, crouch, squat, climb stairs, or climb ladders, and only rarely stoop (*Id.*). He further opined that Plaintiff is unable to grasp, turn or twist object with his hands, use his fingers for fine manipulations, or reach in front of his body or overhead (*Id.*). Dr. Moeser indicated that Plaintiff would be "off task" 25% or more of

---

[4] Crepitus is defined as the grating of a joint. Stedmans Medical Dictionary, 211900 (2014).

the time and that he would miss more than four days per month of work due to his symptoms (Tr. 307). Finally, Dr. Moeser noted that Plaintiff should avoid temperature extremes, wetness, humidity, and repetitive tasks (*Id.*).

The ALJ assigned Dr. Moeser's opinion "very little weight" (Tr. 29). Although the ALJ did not address all of the non-controlling factors found in 20 C.F.R. § 404.1527(c), the ALJ is not required to cite specifically to the regulations but need only clarify whether he discounted the opinions and why. *Kientzy v. Colvin*, No. 4:15 CV 707 JMB, 2016 WL 4011322, at *8 (E.D. Mo. July 27, 2016) (citing *Grable v. Colvin*, 770 F.3d 1196, 1201-02 (8th Cir. 2014)). Here, the ALJ found Dr. Moeser's opinion to be "somewhat" internally inconsistent with treatment notes (Tr. 29). Specifically, the ALJ indicated that treatment notes document that Plaintiff's problems have been "generally intermittent in nature with no other physical issues" and that Dr. Moeser provided conservative medical management (Tr. 29). For example, as noted by the ALJ, Dr. Moeser rated Plaintiff's hand osteoarthritis as mild (Tr. 291). Dr. Moeser's records also reveal that Dr. Moeser found Plaintiff to have a full range of motion except in his lumbar spine in which he found Plaintiff to have a "mildly reduced" range of motion (Tr. 232, 236). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam*, 794 F.3d at 983 (internal quotations omitted).

The ALJ also discounted Dr. Moeser's opinion that Plaintiff has such marked limitation in his activities of daily living because it was inconsistent with Plaintiff's testimony (Tr. 29). Indeed, as noted by the ALJ, Plaintiff testified that he could walk up to two blocks and that he could lift up to 25 pounds (Tr. 76-77). Plaintiff also reported that he takes out the trash, mows the grass using a push mower, and that he is able to do some shopping (Tr. 78-79, 186). An ALJ may discount a treating physician's opinion when it is inconsistent with a plaintiff's activities of

daily living. *Petty v. Colvin*, No. 4:13CV00172 JTK, 2014 WL 3734570, at *3 (E.D. Ark. July 28, 2014). *See also cf. Kroger v. Astrue*, No. CIV. 11-4012-KES, 2012 WL 5363479, at *2 (D.S.D. Oct. 30, 2012) (finding the ALJ inappropriately rejected the opinion of plaintiff's treating physician in part because the physician's opinion was consistent with plaintiff's activities of daily living).

Further, the ALJ found Dr. Moeser's opinion to be inconsistent with the record as a whole (Tr. 29). Specifically, the ALJ noted that imagining showed "only mild findings or nothing at all" (*Id.*). Contrary to Plaintiff's assertion, the ALJ explained in detail the x-rays of record (Tr. 27). For example, as the ALJ indicates, "an x-ray of the knees showed mild degenerative joint disease and an x-ray of the lumbar spine showed mild multilevel degenerative disc disease" (Tr. 27, 238-242). In fact Dr. Moeser noted, "Xrays checked. Symptoms seem out of proportion to findings on Xrays, labs" (Tr. 289). As also noted by the ALJ, while physical therapy reports indicated Plaintiff could walk up stairs, Dr. Moeser opined that Plaintiff could not (Tr. 27, 248). The ALJ also found Dr. Moeser's sit, stand, walk, and leg elevation finding inconsistent with the objective evidence (Tr. 29). Indeed, Plaintiff's physical therapist found that Plaintiff could stand, sit, or ambulate for half an hour without pain (Tr. 248). *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (internal citations omitted) (finding error when the ALJ offered no basis to give an opinion non-substantial weight; "For example, the ALJ did not find the opinion inconsistent with the record or another [of the physician's own] opinion[s].").

Third, the ALJ also conducted a full and thorough review of the medical evidence, finding that the evidence of record failed to support a greater limitation than found in the residual functional capacity (*See* Tr. 27-28). Of note, in addition to the records identified above, the ALJ found then-recent records showed only intermittent, recurrent complaints of moderate joint pain

10

but an overall normal examination with normal gait and station and normal posture (Tr. 27-28, 296, 299, 302). Indeed, as indicated by the ALJ, physical therapists noted that Plaintiff was able to navigate stairs without pain and was able to sit and stand for thirty minutes without pain (Tr. 310).

The ALJ additionally appropriately assessed Plaintiff's credibility. First, the ALJ noted that Plaintiff's varied work history suggests that there may be reasons other than his medical condition which factor into Plaintiff's employment situation (Tr. 27). Specifically, the ALJ found Plaintiff has a consistent but varied work history with many years of good earnings, but with several years of much lower earnings (Tr. 27). *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (holding that the ALJ did not err in evaluating claimant's credibility in finding that his "sporadic work history prior to his alleged disability date" indicated that he was not strongly motivated to engage in meaningful productive activity and that this weighed against the claimant's credibility regarding his reasons for not working) (internal quotation marks omitted). *See also Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ properly found claimant not credible due in part to his sporadic work record reflecting relatively low earnings and multiple years with no reported earnings). Second, after a full and thorough review of the medical record as addressed herein, the ALJ found Plaintiff's statements regarding Plaintiff's "lifelong history of osteoarthritis since age 12," to be inconsistent with the record as a whole. While an ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence. *See Ramirez v. Barnhart*, 292 F.3d 576 (8th Cir. 2002). Third, the ALJ found Plaintiff's conditions to be controlled by medication (Tr. 28). While Plaintiff received a Depo-Medrol

injection on April 30, 2015, as the ALJ noted, Plaintiff continued to take Tramadol and reported that it "really helped" (Tr. 28, 209, 213, 279, 297). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (internal quotations omitted). *See also Renstrom v. Astrue,* 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue,* 578 F.3d 838, 846 (8th Cir. 2009)*; Medhaug v. Astrue,* 578 F.3d 805, 813 (8th Cir. 2009); *Schultz v. Astrue,* 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

Therefore, the Courts finds that the ALJ properly determined Plaintiff's RFC because it was "based on all relevant evidence, including the medical records, observations of treating physicians and others, and [the Plaintiff's] own description of his limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (quotation and citation omitted).

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 22nd day of March, 2018.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE